R. H. HEMPHILL, and REBA HEMPHILL, his wife; REALTY BOND AND SHARE COMPANY, a Delaware Corporation; SAN SEBASTIAN DEVELOPMENT CORPORATION, a Florida Corporation, *Appellants*, v. ADOLPH PESAT, and WILLIAM HILLEBRAND, *Appellees*.

Division A.

Opinion filed July 10, 1929.

*Shepard & Wahl,* for Appellants;

*James T. Vocelle* and *Chas. A. Mitchell,* for Appellees.

ELLIS, J.—This is an appeal from an order denying a petition to stay the sale of lands under a decree of foreclosure. The facts are as follows:

R. J. Hemphill and his wife Reba were indebted to Adolph Pesat and William Hillebrand in the sum of twenty thousand dollars evidenced by three promissory notes in the sum of $6,666.66 each. The notes were dated June 17, 1925, and payable respectively on the 17th of June, 1926, 1927, and 1928. The debtors executed a mortgage upon certain lands to secure the payment of the debt. The mortgage contained the usual covenants of seizen, that the land was free of encumbrances, warranty, and that the mortgagors would pay the debt when due according to the terms of the notes and pay all taxes and attorneys' fees reasonably incurred and to keep the building insured for the benefit of the mortgagees. The mortgage contained an acceleration clause which may be construed to authorize the mortgagees to declare all the notes due and payable upon the failure of the mortgagors to pay any part of the principal debt or interest upon it.

The Hemphills failed to pay the first note when it became due and failed to pay all the interest due upon the principal sum.

On September 14, 1925, the Hemphills conveyed the land to the Realty Bond and Share Company, a Delaware corporation, and on the 12th day of January, 1926, that cor-

poration sold to San Sebastian Development Corporation, a Florida corporation, each grantee taking the property with notice of the Hemphill mortgage which was duly recorded. On the last named date the San Sebastian Development Company gave to the Realty Bond and Share Company a mortgage upon the land and other property to secure a debt of $241,875.00 evidenced by promissory notes.

On August 20, 1927, Pesat and Hillebrand exhibited their bill in chancery to enforce the Hemphill mortgage lien against the Hemphills and made the Realty Bond and Share Company and the San Sebastian Development Corporation parties defendant.

All defendants answered. The cause was referred to a master on December 27, 1926, to take testimony. The special master made his report on January 28, 1927, of which notice was given to solicitors for the respective parties. The cause was set down for hearing on the 21st day of February, 1927, and called up for hearing after due notice on the 1st day of March following.

A final decree was entered for the complainants in the sum of $20,000 principal, $1,919.17 interest and $1,240 solicitors' fees. It was ordered that the defendants pay those sums of money within five days and in default the lands should be sold by the special master at public outcry for cash to the highest bidder before the court house at Vero Beach after notice to be published in a newspaper once each week for four consecutive weeks. The master was required to make report to the court of his doings under the decree. The first notice of the proposed sale was filed in the clerk's office on March 3, 1927, and stated that the sale would take place between the legal hours of sale on Monday, the 4th day of April, 1927.

No sale of the property seems to have been made on that

date and on August 4, 1927, another notice of the proposed sale was filed in the clerk's office that the property would be sold on the 5th day of September, 1927.

On the 1st day of September, 1927, all the defendants joined in a petition to the court praying for an order staying the sale, to prevent a forfeiture of a large sum of money which had been paid upon the decree under contract made between the parties subsequently to the decree, to vacate the decree of foreclosure, that the debt and mortgage be restored in all respects to their original status except for the amounts paid upon it and for general relief. The facts alleged in the petition were verified by oath of petitioners' solicitor. A copy of the contract between the parties was made a part of the petition.

The court denied the prayer of the petitioner and from that order an appeal was taken.

The facts which were alleged in the petition, briefly stated, were as follows: At the time of filing the petition the special master's report was missing from the court files and petitioners could not find it nor ascertain its contents; that no notice of the filing of the report or of setting the cause down for hearing was ever given to the petitioners or their solicitors, which it was alleged violated Chancery Rules numbered 84 and 86; that the special master on March 3, 1927, advertised the land for sale to take place on April 4, 1927; that on August 4, 1927, he again advertised the land for sale to be made on September 5, 1927, which action was without authority because the decree directed him to advertise and sell the land and make report of the same to the court with all convenient speed. It was alleged that subsequently to the date of the entry of the final decree the parties entered into an agreement in writing a copy of which was attached to the petition and made a part of it. That agreement provided that the par-

ties were desirous of postponing the sale of the land "without prejudice in any manner whatsoever to the suit" in consideration whereof the defendants paid to the complainants $6,240 and the latter agreed that the special master should postpone the sale for thirty days. It was also agreed that if the defendants should pay the balance shown to be due by the decree the sum paid should be applied on the principal, interest, fees and costs, and if the balance should not be paid then the amount of $6,240 paid as aforesaid should be "forfeited" by the defendants to the complainants. There was a provision to that clause which secured to the defendants the privilege of paying $5,000 more within thirty days in which event the sale should be postponed an additional thirty days, and that if the balance due under the decree should then be paid the defendants should have credit upon the decree for the amount of such payments but if the balance due should not be paid at the expiration of the second period of extension "all sums so paid should be forfeited to the" complainants.

It was agreed between the parties that the agreement was not one for an extension of time for the payment of the mortgage debt or any part of it but merely an agreement for the postponement of the master's sale of the property under the decree and that if the defendants failed to make the payments agreed upon that the sale of the property should proceed as if the agreement had not been executed.

The petition alleges that the defendants paid the complainants $10,000 and to complainants' solicitor for attorney's fees $1,240; that the first payment of $5,000 and $1,240, making a total of $6,240, was paid March 29, 1927, and the second sum of $5,000 was paid May 3, 1927.

The petition alleged that when the agreement was made the complainants had made all arrangements with their

bankers to furnish the funds with which to make the payments called for by the decree; that after the payment of $10,000 upon the mortgage debt the defendants became temporarily embarrassed and unable to make further payments at the time and the bank suddenly became unable to furnish the funds necessary; that the minimum value of the lands sought to be sold is between $50,000 and $100,000 and the amount due upon the mortgage is small in comparison with such value; that if the land should be sold at the time of the petition it would bring only a small portion of its actual value because the sale value of the property during the summer months is negligible at the present time under existing conditions in Florida. A postponement of the sale for six months was asked during which time the defendants alleged that they could and would readjust their finances in such manner that the complainants would be paid in full.

The full amount of the debt as fixed by the decree, including principal, interest and attorneys' fees was $23,159.97. Under the agreement which the parties made the defendants paid $11,240, leaving a balance due upon the debt of $11,919.97. If the defendants are not allowed a credit upon the decree for the sum paid and the property is sold to satisfy the original sum found to be due with interest and attorneys' fees a forfeiture of an amount equivalent to more than forty-eight and one half per cent of the sum decreed to be paid will result by the court's order denying the prayer of the petition.

While it is true that the parties agreed that the purpose of the agreement was to secure a postponement of the sale under the final decree it is also apparent from the agreement that a forfeiture of the amount which might be paid less than the total sum named in the decree was also contemplated.

Now equity abhors a forfeiture and will always relieve against it when it can be done without doing violence to the contract between the parties. See McCaskill v. Union Naval Stores Company, 59 Fla. 571, 52 So. R. 961; 1 Pomeroy Equity Jurisprudence (4 Ed.) p. 56.

The last clause of the contract contains a provision which is open to the construction that the sale of the mortgaged premises should proceed in the same manner as if the agreement had not been made in the event the defendants should fail to make any payments or perform any covenants "by them to be made and performed under the terms of the agreement." As the only payment the defendants were required to make to obtain a thirty days' postponement of the sale was the payment of $6,240 and which was paid on the date the agreement was signed it cannot be said that they have failed to make any payment to be made by them under the terms of the agreement because the other payments sufficient to obtain an additional extension of thirty days or a total extinguishment of the debt were not compulsory under the terms of the agreement. If then the clause above mentioned contemplated that the sale should proceed as if the agreement had not been made only in the event the defendants failed to pay the only sum which under the terms of the agreement were "to be made" by them it cannot be said that they have failed in their agreement. This interpretation may be in conflict with other language preceding it in the agreement but the Court should look to all the provisions of the agreement to arrive at the purpose of the parties and to avoid a forfeiture if it can be done without violence to the contract of the parties as gathered from the written words.

The contract did not secure to the defendants the privilege of paying five thousand dollars more after the first payment of $6,240 was made. They at all times had the

right to pay the debt, the complainants merely agreed that if $5,000 should be paid they would grant another thirty days postponement of the sale. The defendants were not precluded under the agreement from paying any sum they might have desired or been able to pay whether it was a less or greater sum than $5,000. Yet, if they had paid a greater sum but less than the full amount of the balance due the total amount paid would have been forfeited under the terms of the agreement at the expiration of sixty days from the date of the contract.

Such could not have been the harsh purpose of the parties in view of the language of the last clause of the agreement to which reference has been made and such construction a court of conscience would not be justified from the rules of equity jurisprudence in placing upon it.

We do not determine the point that questions the special master's authority to suit the execution of his duties under the decree to the trading abilities of the plaintiffs. It is also unnecessary to determine whether the failure to observe the requirements of Rules 84 and 86 was fatal to the decree as the parties by their agreement and subsequent proceedings are deemed to have waived that objection.

The order of the chancellor is reversed with directions to allow a credit upon the sum decreed to be paid of the amount actually paid by the defendants and direct the master to readvertise and sell the property for the balance appearing to be due with interest.

TERRELL, C. J., AND BROWN, J., concur.

WHITFIELD, P. J., AND BUFORD, J., concur in the opinion and judgment.

STRUM, J., (dissenting).—It seems to me that the result of the majority opinion and judgment is to revise the con-

tract made by the parties, who were *sui juris* and who contracted voluntarily and dealt at arms length. The contract as construed by the majority is a much more fair and equitable contract, it is to be admitted, than that apparently intended by the parties, but is none the less a departure, in my judgment, from the contract as made. Moreover, it does not appear that the sums paid by the defendants exceeded a fair sum to justly compensate complainants in damages for their forbearance in executing the decree of sale, so as to render such payments objectionable as a penalty.