58 So.2d 676 (1952)
GLYNN et ux.
v.
ROBERSON et al.
Supreme Court of Florida, Special Division A.
April 22, 1952.
*677 Pallot, Silver, & Mulloy, Miami, T.T. Turnbull and Turnbull & Pepper, all of Tallahassee, for appellant.
Charles Girtman and Joseph A. Hackney, Miami, for Mary Freeman Roberson and Jerome Weinkle, Miami, for Thomas Estes Roberson, Jr., appellees.
MURPHREE, Associate Justice.
This is an appeal from a final decree entered in a suit by the lessors to cancel a lease and for a declaration of the rights of the parties to the fund deposited by the lessee. The questions for decision are:
1. Did the Chancellor err in refusing to cancel the lease?
2. If so, was the "security deposit" of $32,000 held by the lessors liquidated damages or a penalty?
3. Should costs and expenses of the suit have been assessed equally between the parties?
J.G. Glynn and wife, appellants, leased a retail liquor store and bar for ten years to Thomas Estes Roberson, Jr., one of the appellees, in July, 1948, at an annual rental of $4,000, plus 25% of the net profits in excess of $15,200 per annum.
Roberson was required to deposit the sum of $36,000 to be returned at the rate of $4000.00 per annum over the period of the lease. In that connection the lease provided:
"* * * the said sum is and shall be security for the performance by the Lessee of all the terms, conditions and agreements in this lease contained by the Lessee to be kept and performed; and shall stand as security also for *678 the protection of the liquor licenses which the Lessor is transferring to the Lessee to be used by the Lessee for the period of this lease, it being understood that the value of the liquor licenses is one of the major considerations for the amount of the rent being paid hereunder and it being further understood that the Lessor, in order to be fully protected, especially insofar as the liquor licenses are concerned, must have the amount of security provided for herein * * *. If the lease is cancelled for the default of the Lessee, no part of the fund shall be returned to the Lessee * * * and the Lessor, on its part, may either retain the fund as liquidated damages, or may apply it as against the actual damage by reason of the Lessee's default in the lease * * *."
The lessee also covenanted on his part substantially as follows: (1) Pay rent promptly; (2) Pay for utilities promptly; (3) Account for excess profits as agreed; (4) Keep liquor license in force and return same to lessors upon expiration or cancellation of lease; (5) Keep premises in repair and commit no waste; (6) Conduct business during normal business hours, holidays excepted; (7) Not sell lease until after July, 1950, and then only by consent of the lessors, who were to share in any profit from the transaction; (8) Pay costs and attorney's fee in event of eviction or suit to cancel lease by lessors.
After the lease was entered into Roberson and his wife, Mary Freeman Roberson, the main appellee, had marital difficulties and they were divorced on January 6, 1950. Under the divorce decree Mrs. Roberson was awarded the business because she had supplied the money for her husband to acquire the lease. She took possession on February 3, 1950, and ran the business, after a fashion, until a receiver was appointed on March 6, 1950, upon institution of the suit below.
By their bill of complaint the Glynns alleged that Mrs. Roberson had violated the lease by permitting gambling on the premises in the form of bookmaking, thus placing in jeopardy the liquor license, and that she was not a fit person to operate the business because of her lack of business acumen and habitual intemperance, so they feared that if the business remained in her hands profits and rents anticipated would be lost and the business eventually destroyed through cancellation of the liquor license. They prayed for a receiver, for cancellation of the lease, and for declaration of the rights of the parties under the terms of the lease. The answer amounted to a denial of the allegations of the Bill.
After hearing the evidence the Chancellor by his final decree entered on April 6, 1951, found: (1) that bookmaking was being conducted on the premises by an employee of Mrs. Roberson and by those unlawful acts the liquor license was in jeopardy; (2) that Mrs. Roberson failed to keep the business open during normal business hours as required by the lease, which caused a loss of profits to the business; (3) that Mrs. Roberson "* * * by her own admission knew nothing and cared little about the operation of the business * * *." and she was "* * a woman utterly unfit and incapable of managing this property"; (4) that "* * to award plaintiff the thirty-two thousand dollars ($32,000) security would be a grave injustice to the defendant, Mary Freeman Roberson, as this court is not convinced that the damages suffered by the plaintiff amounts to such a huge sum, if any damages have accrued to him at all * * * "; (5) that the solution to the problem lay in allowing Mrs. Roberson to continue as lessee to operate the business under a "* * * management agreement for a person well versed in handling of businesses of this type * * *", which agreement was exhibited to the court.
The Chancellor then decreed: (1) that Mrs. Roberson should continue as lessee, the $32,000 remaining in the security fund to be returned to her according to the terms of the lease; (2) that the receivership be terminated; and (3) that the costs of the suit including the expense of the receivership in the total amount of $1750 be taxed equally between both parties.
Twelve days later on petition for rehearing, it being shown that the manager *679 selected by Mrs. Roberson and approved by the court was unfit by virtue of having a criminal record, the Chancellor withdrew his approval of that arrangement, leaving Mrs. Roberson in complete charge of the business; and reinstatement of the receivership was refused. The Glynns then appealed.
It is apparent from the record that the Glynns selected Roberson as their lessee in the belief that he was a good operator and that in addition to the $4000 annual rent there probably would be profits in excess of $15,200 in which they would share, but Mrs. Roberson was forced upon them as an involuntary assignee. 32 Am.Jur. 300, sec. 335.
Not only did Mrs. Roberson violate a condition implied by the very nature of the lease in allowing gambling to be conducted on the premises by an employee, a cause for revocation of the liquor license, 561.29, F.S.A., State Beverage Dept. v. Willis, 159 Fla. 698, 32 So.2d 580 and the express condition that the business be kept open during normal business hours, but she was found by the Chancellor to be utterly incapable of managing the business. With her in charge any expectation of sharing in excess profits by the lessors would be dim indeed, and what is more serious, there is ample basis for their fear that the liquor license would eventually be cancelled before expiration of the lease, possibly at a time when the security fund would be insufficient indemnity for the loss. The testimony shows that the property is at least twice as valuable with the liquor license than without. Under Mrs. Roberson's continued management, even if the license remained intact, the business would doubtless depreciate in value. In the light of all this to permit her to remain in control would be almost tantamount to waste.
Under such circumstances we are constrained to hold that the Chancellor was in error in not cancelling the lease and returning the Glynns to possession.
It seems apparent from the Chancellor's decree that he declined to cancel the lease to avoid a forfeiture of the $32,000 security fund to the lessors, an amount he deemed unconscionable in the light of actual damages sustained. We do not consent, however, that a forfeiture of the money inevitably followed, because we regard it as a penalty rather than true liquidated damages.
In Hemphill v. Pesat, 98 Fla. 124, 123 So. 561, 563, this court said:
"Now equity abhors a forfeiture, and will always relieve against it when it can be done without doing violence to the contract between the parties. See McCaskill v. Union Naval Stores Co., 59 Fla. 571, 52 So. 961; 1 Pomeroy, Equity Jurisprudence (4th Ed.) p. 56. * * * the court should look to all the provisions of the agreement to arrive at the purpose of the parties and to avoid a forfeiture if it can be done without violence to the contract of the parties as gathered from the written words."
As we interpret the lease from a careful study of it (see excerpts supra) the real object of so large a deposit ($36,000.00) was to insure against damage through loss of the liquor license, rather than as damages for failure to perform the various other covenants of lessor significance which were undertaken by the lessee. The liquor license has not been impaired, so if such interpretation is correct what this court said in the case of Moses v. Autuono, 56 Fla. 499, 47 So. 925, 926, 20 L.R.A.,N.S., 350, would apply to the present situation:
"Where a contract expressly provides stipulated or liquidated damages for a particular breach, and the breach alleged is not the one provided for or contemplated in fixing the measure of damages, the loss, if any, sustained by the plaintiff because of the alleged breach of the contract, should be determined not by the stipulation contained in the contract, but by the law."
But we do not rest our decision here, because there are other cogent reasons for holding the fund to be a penalty instead of true liquidated damages.
In the recent case of Stenor, Inc., v. Lester, Fla., 58 So.2d 673, involving the lease of a hotel, there was presented a factual situation practically identical to *680 the case under review. There, just as here, the lease provided that the fund was to secure performance of all of its terms and conditions and upon default the entire fund was to be retained as "liquidated or agreed upon damages" or applied against the actual damages sustained, at the option of the lessor. This Court held that the fund was a penalty and not liquidated damages, leaving the lessor to proof of actual damages sustained.
In that case the decision was rested largely upon the well recognized rule that where an agreement is to pay the same sum for a partial as for a total breach or is to secure the performance of covenants of widely varying importance for any use which the sum is excessive, it will be regarded as a penalty. Greenblatt v. McCall & Co., 1914, 67 Fla. 165, 64 So. 748; Smith v. Newell, 1896, 37 Fla. 147, 20 So. 249; Pomeroy's Equity Jurisprudence, 5th ed., Vol. 2, page 260, sec. 443.
Surely that rule is applicable to the instant case, for the several covenants undertaken by the lessee (recited supra) vary in importance and the sum deposited would be an exhorbitant amount to allow for the breach of practically all of them except the promise to keep the liquor license in force.
Another basis for the decision in the Stenor case, supra, was that the lessor had the option to retain the fund as liquidated damages or apply same against the actual damages sustained  an indication of a penal intent. Such is the case here.
And still another basis of that decision was the doctrine that equity will not avail itself to one seeking its aid to retain payments as liquidated damages in excess of actual damages. Taylor v. Rawlins, 1905, 90 Fla. 621, 106 So. 424.
The Chancellor was not convinced that the Glynns had sustained damages of anything like $32,000, and we agree. The rent has been paid. The liquor license has not been lost. Mrs. Roberson only operated the business slightly over a month when the Glynns caused a receiver to be appointed so there could hardly be any loss attributable to her through failure to produce excess profits in which the lessors would have shared. No damage can be claimed for loss of anticipated sharing of profits through a sale of the lease because by its very terms there could be no sale before July, 1950, a date subsequent to the Glynns' institution of suit to terminate the lease.
As to the matter of costs, including expenses of the receivership, Mrs. Roberson should pay the entire amount. The receivership was her fault and the lease provided that in a suit for cancellation the lessee should pay all costs.
The Glynns should be permitted to retain only so much of the $32,000 fund as they can allege and prove as actual damages sustained, together with court costs and a reasonable attorney's fee for their attorney, as provided by the lease.
Accordingly, the final decree is reversed and the cause remanded for further proceedings consistent herewith.
SEBRING, C.J., and TERRELL and THOMAS, JJ., concur.