DICKINSON, Associate Justice.
The appellant filed a suit for declaratory decree against the appellee in the lower court seeking a return of a security deposit posted by it or its predecessor lessee in the matter of a 99 year lease on certain property in Dade County, Florida, alleging among other things that although there had been a default in the payment of rent, for which default it had been evicted, the transaction in effect was a purchase of the property at the end of the 24th year of the lease, there then being an option for a purchase of the property at a price of $32,500, which was the same amount as the security deposit. It sought a declaration of its rights as to a refund of this security deposit, less the amount of the rent in the payment of which it had defaulted and for which it had been evicted, claiming that the defendant lessors had refused to return any of the money. The defendant lessors filed a motion to dismiss, questioning the equity of the bill, which motion to dismiss was sustained, and the plaintiff refusing to amend, the cause was dismissed with prejudice by the lower court.
This case involves a 99 year lease entered into on October 14th, 1946, covering two lots in Miami Beach, one of which lots apparently being improved with an apartment building situate thereon and the other one at the time of the lease being a vacant lot. The lease called for a ground rental of $7500 per year for the two lots, payable *499 in certain installments. In addition to this ground rental, the lessee was to erect at lessee’s expense or cost before the expiration of the 5th year of the lease a building on the vacant lot, such building to be substantially equivalent in style, quality, and quantity to the apartment building then located on the other lot; and in addition thereto the lessee was to pay all principal and interest payments as they accrued on the then existing mortgage, the principal of which amounted to some $83,250, and all taxes, assessments, and other similar levies made upon the properties involved. There was a provision in the lease for the lessors joining in any refinancing up to the extent of the existing mortgages hereinbe-fore mentioned, should the same become necessary, but this was not to cover any mortgage that may have been necessary to have been placed on the property for the construction of the building to be erected by the lessee at his expense on the vacant lot.
A security deposit of $32,500 was posted to stand as security for the performance by the lessees of all of the terms, conditions, covenants, and agreements in the lease to be kept and performed by the lessees covering both real and personal property. The covenants with relation to this deposit were substantially that if the lease were cancelled, 1) no part of the security fund should be returned to the lessees, nor should the lessors be bound to account to lessees for any part thereof, 2) the lessors could either retain the security fund as liquidated and agreed upon damages, or retain it and apply it towards .actual damages sustained by them, 3) no interest should 'be paid on this security fund, 4) the lessors were not required to keep the fund separate or in a segregated account, 5) neither the security fund nor any part thereof should ever be applied as rent, and 6) a provision for a gradual return to the lessees of certain portions of the security fund in the closing year of the lease according to a table scheduled therein.
Paragraph 20 of the lease further provided that upon any default prior to the expiration of the 99 year term “all security moneys paid to the lessors * * *, at once pass to and become the property of the lessors, not as a penalty or forfeiture, but as liquidated damages to the lessors because of such default by the lessees hereby fixed and agreed upon between the parties hereto, both of the parties recognizing the impossibility of precisely ascertaining the amount of damages that will be sustained by the lessors in consequence of such default, and both parties desiring to obviate any question or dispute concerning the amount of such damages and the cost and effect as such default in consequence of such forfeiture have taken these elements into consideration in fixing and agreeing upon the amount of rent to be paid by the lessees to the lessors.” (Italics supplied).
This Court is committed to the doctrine that when the actual damages contemplated by the parties upon breach are susceptible of ascertainment by some known rule or pecuniary standard and the stipulated sum is disproportionate thereto, it will be regarded as a penalty. Such being the case, the corollary of the rule should be true, that is, that when the actual damages cannot be susceptible of ascertainment by some known rule or pecuniary standard under reasonable circumstances, the stipulated amount should be regarded as liquidated damages, and the parties should be bound by their covenants and the contract so made. The prime factor in determining whether such sum is a penalty or a forfeiture is whether the sum named is just compensation for damages resulting from the ■breach.
■ This case can easily. be distinguished from the cases of Stenor, Inc., v. Lester, 58 So.2d 673; Kaplan v. Katz, 58 So.2d 853, and Nash v. Bailey, 58 So.2d 680, recently decided by this Court. This .case has many more equities in it than were involved in those cases, and can be easily distinguished therefrom as follows: in the Stenor-Lester case the lease was for five years at $11,500 per year with a,security deposit of $11,200 and interest was, to be paid on this security deposit. In the Kap-lan-Katz case the lease w.as for five years at $17,500 per year with a. security deposit of $15,000 for the payment of rent, and $4500 for the return of any personal prop *500 erty involved, and interest was to be paid therefrom. In the Nash-Bailey case the lease was for three years at an annual rental of $27,000 with a security deposit of $27,000. Thus these three cases involve short term leases and the security deposit is either equal to or greater than the amount of rent to be paid thereunder.
In this case the lease is for 99 years with a ground rental of $7500 plus payments of principal and interest on the mortgage and all taxes that may be levied thereon. It covers two lots, one improved and one unimproved. Within five years the lessee was to build a building on the vacant lot at his cost, substantially equal to the one already on the other lot. There was an option to purchase at the end of 24 years of the lease for $32,500. A security deposit of $32,500 was posted. No interest was to be paid on this sum, nor was there to be any segregation required of the fund. The security deposit was never to be applied to rent and the most important of all the specific clauses covering this security deposit recognized, as hereinbefore quoted, the impracticability, or, even stronger, “the impossibility” of precisely ascertaining the amount of damages that would 'be sustained in the event of default, and both parties agreed that they had taken all these elements into consideration in fixing the amount of rent and that they desired to obviate any dispute arising concerning ; the amount of damages and the cost and effect of such default. This is a very broad covenant. The damages cannot be easily ascertained. We do not know whether any other lease can be made upon the property which would recompense the lessor by the ground rental payment, the payment of existing mortgage, and taxes upon the property, to say nothing of the erection of a building upon the vacant lot by the lessee at no expense to the lessor, and other similar items. Neither is the amount of the security deposit disproportionate to the rental for the period of 99 years. When everything is taken into consideration, the deposit is not disproportionate even to the 24 year period, including ground rental payments, principal and interest payments on the mortgage, and taxes, and erection of a building substantially equivalent to that on one of the lots leased, which old building must have some material value in order to support mortgages to the extent of $83,250.
From a careful examination of the record in this case it appears that the damages accruing to the landlord would greatly exceed that of the security deposit in this case or at least be sufficient to permit lessee to retain the security deposit as liquidated damages; especially in view of the broad and extensive covenant of the parties relating thereto, that is, that they themselves took into consideration the impossibility of precisely determining the amount of damages under this lease in case of default.
Therefore, it is the opinion of this Court that the amended Bill of Complaint contained no equity and that the motion to dismiss was properly sustained, whereupon the judgment and order of the lower court should be, and it is hereby affirmed.
SEBRING, C. J., and THOMAS, J., concur.
HOBSON, MATHEWS and ROBERTS, JJ., concur specially.
DREW, J., not participating.