RAWLS, Chief Judge.
Plaintiffs Edward F. Crouch and his wife have appealed from a final decree denying them rescission of a contract to purchase realty and granting to the defendants, the Williamses, specific performance of that portion of the contract regarding surrender of the premises in event of default in payment.
The Crouches brought this action in chancery seeking rescission of a contract to purchase a home near Lanrak in Franklin County on the grounds that the vendors, Walter Williams and his wife, falsely represented to them that the water supply was good, that the house was located in the center of the lot, that the defendants could and would convey the property free of all encumbrances, that the ditch located on the property could be moved or filled in by the purchasers, and that there were no liens on the property. It was also alleged that the plaintiffs entered into the contract relying on these misrepresentations. The Wil-liamses counterclaimed for specific performance.
Under the terms of the contract for deed the Crouches agreed to pay $18,000 for the house, lot and furniture in the following manner: $200.00 at the time of executing the contract (August 22, 1962), $4,000.00 on October 22, 1962, $70.00 a month through October 10, 1963 and the balance plus in-’ terest at 6% on or before September 1, 1963. At the time of filing the complaint, on December 9, 1963; the Crouches had paid'. $4,900.00 on the contract price plus other incidental expenses. The Crouches also-agreed to pay taxes and insurance. Title-to the property was to remain in the Wil-liamses until they had received payment in-, full, at which time they would convey same-to the Crouches “free and clear of all in-cumbrances.” The contract gave the Crouches the right to occupy the premises, as tenants, during its life and contained the-further provision that upon default in any payment or upon default in any of the terms- and conditions “it is mutually agreed that all sums of money paid on the purchase-price or otherwise shall be the reasonable-value of the use and occupation of said" premises to such date * * *, and all[1] such sums shall be kept and retained by the parties of the first part [the Wil-liamses] as liquidated damages for the-breach of this agreement.” (Emphasis, supplied.)
The evidence showed that the water was-unfit for human consumption, that the-carport adjoining the house encroached on-an adjoining lot and that, though there is-nothing of record, sufficient facts exist: upon which the State Road Department can establish a 16 foot easement for drainage purposes across the property due to a. ditch which was in existence at the time the-parties entered into the contract. This-ditch is now undermining the carport.
The chancellor found it had not been established by clear and convincing evidence-that the defendants made any representations on which the plaintiffs relied in entering into the contract with regard to the boundaries of the lot, its width, the location of the house in relation to the boundaries, or with regard to the ditch in question ; that any alleged representations as to-the quality of the water, if made, were merely expressions of opinion upon which the plaintiffs had no right to rely; andi *119 that the purchase of the additional 10 feet along the east lot line cured the defect of the encroachment on the adjoining property. We find no error in these concld-.sions.
The only point meriting the consideration of this court is whether the chancellor -erred in enforcing that part of the contract which provided that upon default in' ■making the payments or default in any of the terms of the contract, the vendees would "be considered tenants of the vendors and all payments made be retained by the vendors as compensation for the use and occupation of the premises and as liquidated damages.
In Taylor v. Rawlins,[1] the vendee of a contract of purchase and sale of real estate defaulted in making the payments, and the vendor brought suit to have the contract cancelled of record in order to clear his title. The contract provided: .
■“ ‘The time of payment shall be an •essential part of this contract’ and ‘in case of a failure of the said party of the second part to make either of the payments or any part thereof, or to' perform any of the covenants on her part hereby made and entered into, this contract shall, at the option of the parties of the first part, be forfeited and terminated, and the party of the second part shall forfeit all payments made by her on this contract, and such payments shall be retained by the said parties of the first part in full satisfaction and in liquidation of all damages by them sustained, and the said parties of the first part shall have the right to re-enter and take possession of the premises aforesaid without being liable to any action therefor.’ ”
The Florida Supreme Court held that when one comes into equity, he will not be allowed unconscionable relief. The Supreme Court noted there that the vendee had derived no financial benefit from the property and the vendor had not sustained any loss or damage by reason of the contract, so the complainant was entitled to have the contract declared null and void and cancelled of record upon returning to the "vendee all amounts she had paid by virtue of the contract The rule as stated in the subsequent appeal is:[2]
“It is proper and leigitimate for parties to contract in law for the payment of liquidated damages for the breach of a contract, but one coming into a court of equity seeking relief must come with clean hands and offer to do equity. To permit the vendors (who invoke the aid of equity to cancel the contract) to retain any substantial part of the total sum paid on the contract in excess of the damages resulting to them by reason of its breach, would be contrary to every principle of equity jurisprudence. In awarding the equities to the parties hereto, the chancellor should take into consideration every fact that materially affects their rights as related to this case.”
In the Rawlins case the Supreme Court found that the down payment of $1,500.00 on the property worth $7,500.00 was unconscionable. Likewise in Stenor, Inc. v. Lester[3] the $11,200.00 agreed upon by the partes as “liquidated” damages for breach of a lease requiring rent at the rate of $11,200.00 was regarded by the court as a penalty since it exceeded actual damages. There it held that one invoking equity jurisdiction may not retain payments as liquidated damages in excess of his actual damages, and when the sum is viewed by the court as a penalty, the party seeking to re *120 cover for the breach must allege and prove his actual damages.[4]
We conclude that the defendant by his counterclaim sought the aid of equity and by doing so he must do equity by proving the actual loss or damages he sustained by reason of the contract.
The judgment appealed is affirmed in part and reversed in part for further proceeding as may be necessary to determine what portion of the sums paid may be retained by the defendants.
WIGGINTON, J., concurs.
STURGIS, J., concurs specially.

. Taylor v. Rawlins, 86 Fla. 279, 97 So. 714, 35 A.L.R. 271 (1923).

. Taylor v. Rawlins, 90 Fla. 621, 106 So. 424 (1925).

. Stenor, Inc. v. Lester, 58 So.2d 673 (Fla.1952).

. This principle was also followed in Glynn v. Roberson, 58 So.2d 676 (Fla.1952) and Sundie v. Lindsay, 166 So.2d 152 (Fla.App.3d, 1964).