73 So.2d 393 (1954)
HYMAN et al.
v.
COHEN.
Supreme Court of Florida. En Banc.
May 25, 1954.
Rehearing Denied July 27, 1954.
*394 Ward & Ward, Miami, and John E. Porte, Miami Beach, for appellants.
Sibley & Davis, Miami Beach, for appellee.
ROBERTS, Chief Justice.
The litigation resulting in the final decree with which we are here concerned had its inception in a controversy between the parties to a lease of certain hotel property in Miami Beach, as to their respective rights thereunder and particularly as to the disposition to be made of a deposit in the amount of $25,000 made by the lessee with the lessors at the beginning of the lease term. The lessee, who is the appellee here, was the moving party in the litigation, his suit being filed after he had vacated the premises upon threat of eviction by the lessors for non-payment of rent. By his suit, the lessee invoked the aid of the equity court for a declaration of his rights under the lease and, specifically, to have the lease declared to be "cancelled, null and void" *395 and to obtain the return of his $25,000 deposit. From a decree in favor of the lessee, the lessors have appealed.
The lease in question was for a five-year term and called for an annual rental of $25,000. The $25,000 deposit was denominated in the lease as a "cash bond" guaranteeing the performance of all the covenants of the lease, including the covenant to pay rent, but there was no provision for forfeiture of the deposit upon the mere breach of a covenant by the lessee. The lease provided for the forfeiture of the deposit in the following terms: "If the lease is cancelled for default of the lessee, then no part of the funds shall be returned to the lessee by the lessors, nor shall the lessors be required to account to the lessee for any part of the said fund." Provision was made for the return of the deposit to the lessee during the last year of the rental period, although not as rent.
The lessee went into possession of the lease premises in July of 1948, although the lease was dated October 1, 1948, and operated the hotel until October of 1950. He did not, however, pay the rental installments of $5,000 each due on February 1, 1950, and October 1, 1950. On October 10, 1950, the lessors advised the lessee, in writing, that the lessee was in default in these payments and stated further that "You are hereby required to make payment of said rent, or to surrender the premises to the undersigned within three days from the date whereupon this notice is given, in accordance with Section 83.20 (2) of Compiled General Laws of Florida."
On October 13, 1950, the lessee wrote the lessors that their "demand of surrender * * * is accepted, and in compliance with said demand, we tender back * * * possession of said premises as surrender thereof, and hand you herewith the keys to said premises." The lessee in this letter also referred to a previous letter which he had written to the lessors under date of October 5, 1950, charging the lessors with failure to make the repairs required of them by the lease. He demanded that the lessors account to him for the cash bond of $25,000 held by them.
The lessee thereupon moved out of the hotel and, on October 23, 1950, filed this suit. His complaint alleged the facts above recounted and stated that there was a dispute between him and the lessors as to whether, in these circumstances, there had been a mutual cancellation of the lease by the parties. It was his contention that the lease had been so cancelled. It was also alleged that the right of the lessors to retain the $25,000 deposit had been terminated by the mutual act of the parties and that the lessors were holding this fund as trustees for the lessee. The bill prayed for a declaration of the rights of the parties and, specifically, that the court declare that the lease "is at an end and is terminated and all rights and obligations of the parties thereunder have come to an end; that the court cancel, void and annul said lease by reason of the defendants' breach of the said lease [as to the alleged breach of the lessors' covenant to repair] and by reason of the surrender made and accepted in pursuance thereof; and that the defendants be required to account to the plaintiff for the cash bond and require them further to forthwith pay the same sum to the plaintiffs."
Their motion to dismiss having been denied, the lessors filed their answer in which they alleged, in substance, that the lease was still in effect and that the lessee "is still liable for the payment of damages for any difference between the amount of rent which they had agreed to pay and the amount which the lessors may ultimately receive for the balance of the term together with the $10,000 now in default, plus interest, attorneys fees and costs." It was also alleged that the lease market in Miami was fluctuating and had been for many years, and that it was impossible to tell at that point just what damages the lessors would ultimately suffer "by reason of the tenant, the plaintiff, wrongfully breaking the terms and conditions of said lease." They asked the court to treat the $25,000 deposit as liquidated damages and that the plaintiff be decreed to be estopped, because *396 of his own wrongdoing, to claim any portion of the fund or, in the alternative, that the lessors be allowed to retain the deposit "as rental to be applied upon the default of the lease in the last year of the term." They also prayed that the court "determine that the plaintiff is still indebted to these defendants in the sum of $10,000 plus attorneys fees and accrued interest and costs."
The cause went to trial before a Special Master on the issues thus made by the pleadings.
The Master made a full report, with extensive findings of fact. We will, however, set forth only those which we deem pertinent to the issues before this court.
On the question of whether the lease had been terminated, the Master found that the actions of the parties "served to cancel the lease and to terminate tenant's liability to landlords for any rent falling due after October 13, 1950."
As to the $25,000 deposit, he found that "the $25,000 deposit is only a security deposit, and cannot be appropriated by landlords as and for agreed or liquidated damages." He found that there was due and owing to the lessors $10,000 for past-due rent accrued at the time of the termination of the lease, and recommended that the lessors be allowed to deduct this amount, plus interest, and also any taxable court costs, from the security deposit, and that a money judgment be entered for the lessee for the balance of such deposit. He also recommended that the final decree recite that the lease was cancelled as of October 13, 1953, and that the parties thereto are released from any further liability thereon.
The Chancellor over-ruled the exceptions to the Master's Report, except as to an allowance of an attorney's fee to the lessors, and entered his final decree ratifying and confirming the Report in all other respects. As noted above, the lessors have appealed from such decree.
The lessors here contend, first, that equity had no jurisdiction of the cause, there being an adequate remedy at law. This contention cannot be sustained. We think the allegations of the bill were sufficient to state a cause of action under the Declaratory Judgments Act, F.S.A. § 87.01 et seq., within the rule stated in Ready v. Safeway Rock Co., 157 Fla. 27, 24 So.2d 808. Moreover, it would appear that the complaint stated a cause of action in equity, independently of the Declaratory Judgments Act, in that a bill for cancellation of a lease is a recognized subject for equitable relief.
It is also contended on behalf of the lessors that the lower court erred in holding that the lease had been "cancelled"  it being the contention of the lessors here, as it was in their answer, that the lease is still in effect and that their operation of the hotel subsequent to re-entry was "for the account of the lessee."
As in the case of Stenor, Inc. v. Lester, Fla., 58 So.2d 673, 676, the lessors here, upon default in the payment of rent by the lessee, "had the right to elect to treat the lease as terminated and resume possession of the premises, thereafter using the same exclusively as [their] own for [their] own purposes; or [they] might have retaken possession of the premises for the account of the lessee, holding the lessee in general damages for the difference between the rental stipulated to be paid and what in good faith appellant might have been able to recover from a reletting; or [they] might have stood by and done nothing and sued the lessee as each installment of rent matured, or for the whole when it became due." And we think that the evidence in the instant case, as in the Stenor v. Lester case, showed that the lessors elected to pursue the first of these alternatives.
As heretofore noted, on receipt of the notice to "pay up or get out," the lessee "got out." Thereafter, the lessors took over the operation of the hotel, rented it to a corporation which they formed for that purpose, and at no time advised the lessee that they were doing so "for the account of the lessee." The question of *397 whether the lessors' re-entry and subsequent use of the premises was for their own account or for the account of the lessee was a question of fact, which was resolved by the Special Master against the contention of the lessors, and we think the evidence was clearly susceptible of the inference that they resumed possession "for their own account.'
But this is not to say that the lessors thereby "cancelled" the lease in the sense of a "rescission" thereof.
It is unquestionably true, as contended by the lessee, that the effect of the "rescission" of a contract is to extinguish it for all purposes, not only to preclude the recovery of the contract price but also to prevent the recovery of damages for breach of the contract. Upon a rescission, "the contract is annihilated so effectually that in contemplation of law it has never had any existence, even for the purpose of being broken. * * * After rescission for a breach, there is no right to damages for such breach. The party rescinding may, however, have a right to restitution with respect to any performance on his part." 12 Am.Jur., Contracts, Sec. 446, page 1027.
But, as stated in Stennick v. J.K. Lumber Co., 85 Or. 444, 161 P. 97, 107: "Declaring a forfeiture for breach of the conditions of a contract is not rescission of the contract. It puts an end to the contract and extinguishes it in pursuance to its terms just as performance extinguishes it. The act of taking possession under a forfeiture clause is not an act of rescission or in avoidance of the contract, but the assertion of a right growing out of it."
Justice Taft drew a clear and definite distinction between the technical rescission of a contract and its annulment, termination or abandonment by virtue of its terms, in Hayes v. City of Nashville, 6 Cir., 80 F. 641, 645, in the following language: "It is well settled that a technical rescission of the contract has the legal effect of entitling each of the parties to be restored to the condition in which he was before the contract was made, so far as that is possible, and that no rights accrue to either by force of the terms of the contract. But, besides technical rescission, there is a mode of abandoning a contract as a live and enforceable obligation, which still entitles the party declaring its abandonment to look to the contract to determine the compensation he may be entitled to under its terms for the breach which gave him the right of abandonment."
It should also be noted that there is a line of cases which hold that the general principles of contract law respecting the rights of an injured party upon a total breach of the contract by the other contracting party, are applicable to lease agreements. Thus, it is well settled in contract law that, as stated in 12 Am.Jur., Contracts, Section 389, page 966:
"A material breach, as where the breach goes to the whole consideration of the contract, gives to the injured party the right to rescind the contract or to treat it as a breach of the entire contract  in other words, an entire or total breach  and to maintain an action for damages for a total breach. Whenever there is a total breach of a contract by one party to it, the other is at liberty to treat the contract as broken and desist from any further effort on his part to perform it. In other words, he may abandon it and recover as damages for the breach the profits he would have received by a full performance. Such an abandonment is not technically a rescission of the contract, but a mere acceptance of a situation created by the wrongdoing of the other party."
In the application of the foregoing principles to lease contracts, many courts have held that a breach of the material parts of the covenants of a lease, accompanied or followed by a renunciation of the whole lease, gives rise to a cause of action for the recovery of damages as for a total breach of a contract. See Sagamore Corporation v. Willcutt, 120 Conn. 315, 180 A. 464; Bradbury v. Higginson, 162 Cal. 602, *398 123 P. 797; Hawkinson v. Johnston, 8 Cir., 122 F.2d 724, 137 A.L.R. 420; Marathon Oil Co. v. Edwards, Tex.Civ.App., 96 S.W.2d 551; Lips v. Opp, 150 Kan. 745, 96 P.2d 865.
And even in those jurisdictions which do not apply the foregoing principles of contract law to lease agreements, it is recognized that the parties may expressly contract for the survival of liability on the part of the tenant after a premature termination of the lease by the lessor for the default of the lessee. See Rasch, on Landlord and Tenant, 1950 Ed., page 591; 32 Am.Jur., Landlord and Tenant, Sec. 876, page 743; Burns Trading Co. v. Welborn, 10 Cir., 81 F.2d 691, 106 A.L.R. 285.
In the instant case, it was clearly the intent of the parties that there should be a "survival of liability" on the part of the lessee, even though the lease was terminated by the lessors. They could oust the lessee of his possession under the lease and thereafter rent the same "for the account of the lessee," holding the lessee in damages for the difference between the rental stipulated to be paid and what in good faith the lessors might have been able to recover from a reletting, in which event the cause of action for such damages would not accrue until the time when the forfeited term, if it had not been forfeited, would have expired. See 32 Am.Jur., Landlord and Tenant, Sec. 879, page 745. Or they could terminate the lease and thereafter use the premises exclusively as their own for their own purposes, in which event, according to the terms of the lease, "then no part of the funds shall be returned to the lessee by the lessors, nor shall the lessors be required to account to the lessee for any part of the said fund." This was in effect, a provision for the forfeiture of the deposit, upon the termination of the lease by the lessors for the fault of the lessee.
Since we have held that the lessors terminated the lease and thereafter used the same exclusively for their own purposes, what, then, were the rights of the parties in and to the $25,000 deposit?
The Special Master evidently based his decision that the provision for the forfeiture of the deposit upon a termination of the lease could not be considered an agreement for liquidated damages on the fact that the parties did not expressly so stipulate. But it has been repeatedly held that the name given by the parties to a sum stipulated to be paid upon the default of one of them is not at all conclusive as to the character of the stipulation. If it was the real intention of the parties, as ascertained from all the language which they have used, from the nature of the act to be performed, or not to be performed, from the consequences which naturally result from a violation of the contract, and from the circumstances generally surrounding the transaction, that the sum stipulated to be paid or forfeited was intended to be "liquidated damages," it will be so held, even though the parties may have designated it a "penalty." See Pomeroy's Equity Jurisprudence, 3rd Ed., Sec. 440, page 727. Nor is the fact that the parties designated the deposit a "cash bond" conclusive on this question. Cf. Clark v. Barnard, 108 U.S. 436, 2 S.Ct. 878, 27 L.Ed. 780; Muse v. Swayne, 70 Tenn. 251, 31 Am.Rep. 607; Marsh v. Phillips, Tex.Civ. App., 144 S.W. 1160; Guerin v. Stacy, 175 Mass. 595, 56 N.E. 892.
Regardless, then, of the language used by the parties in stipulating for the forfeiture of a deposit, the courts will apply certain well settled rules to determine whether the parties actually intended to liquidate their damages or whether their real intention was only to induce performance. If it is clear that they could have intended only the latter, then the provision for forfeiture will be held to be a provision for a penalty.
Thus, in the case of a stipulation for payment of a fixed sum or forfeiture of a deposit upon the breach of a covenant, if the damages for such breach are readily ascertainable and, when so ascertained, are out of all proportion to the amount stipulated to be paid or forfeited, the parties could only have intended to induce *399 performance of the covenant and not to liquidate in advance their damages for such breach. Similarly, if the payment or forfeiture is incurred upon the breach of any of several different covenants of widely varying importance, for any of which the sum is excessive, the same intention is apparent. As stated in Fleisher v. Friob, 97 Misc. 343, 161 N.Y.S. 940, 946: "* * * for it follows quite naturally that, had the parties really intended that the security should be treated as liquidated damages, they would have so apportioned it as to prevent the infirmity." Such provisions are, then, generally construed as stipulations for a penalty, from which equity will grant relief. This is on the ground, as stated by Pomeroy in his Equity Jurisprudence, 5th Ed., Sec. 433, page 207, that "it is wholly against conscience to say that because a man has stipulated for a penalty in case of his omission to do a particular act  the real object of the parties being the performance of the act  if he omits to do the act, he shall suffer a loss which is wholly disproportionate to the injury sustained by the other party." (Emphasis supplied.)
In Stenor, Inc., v. Lester, supra, 58 So.2d 673, 674, this court applied the rule last cited (as to breach of covenants of widely varying importance) to defeat the contention of the lessor that the provision for the forfeiture of the deposit was one for liquidated damages  and properly so, since, as stated by the court, the lease "provided that on default by the lessee the entire sum at the option of the lessor should be retained as `liquidated and agreed upon damages' for breach or as a pro tanto amount for the lessee's actual damages." (Emphasis supplied.) This can only be interpreted as indicating that the lease in the Stenor case provided for forfeiture upon the mere breach of a covenant by the lessee.
But we do not construe the lease in the instant case to provide for forfeiture upon mere breach. While the deposit is denominated a "cash bond guaranteeing" the full performance of all the covenants of the lease, it is also referred to as a "security payment" and provides for the return of the deposit to the lessee at stated intervals during the last year of the term for the reason that, as stated in the lease, "as the end of the term approaches the need for security diminishes." The lease specifically provides for forfeiture "if the lease is cancelled for default of the lessee" which, of itself, indicates that the parties intended the deposit to be forfeited only in the event of the termination of the agreement since, otherwise, there would have been no necessity for inserting the provision just quoted.
We think, then, that when the provisions of the lease with respect to the deposit are construed in connection with the entire agreement of the parties, it is apparent that the parties did not have in mind a technical "bond" conditioned upon the forfeiture of the entire amount of the deposit upon the mere breach of any covenant. The "bond", or "security payment", was simply a security deposit intrusted to the lessors to hold as security against defaults of the lessee. Cf. Atlas v. Moritz, 217 App.Div. 38, 216 N.Y.S. 490. Such security deposits in lease agreements are variously referred to as "security for the full performance of all the covenants of the lease", J. & H. Garage, Inc. v. H. Flow Corporation, 225 App.Div. 65, 232 N.Y.S. 242; Colantuoni v. Balene, 95 N.J. Eq. 748, 123 A. 541; Central Trust Co. v. Wolf, 255 Mich. 8, 237 N.W. 29, 78 A.L.R. 843; or as "collateral security" for such performance; or as a deposit "to insure" performance. But whatever the language used by the parties, in the absence of a provision for the forfeiture of the deposit for the mere breach of a covenant by the lessee, the deposit is one for "security" in the sense of an assurance fund, available for the payment of damages for breach of a covenant by the lessee. "It is a deposit similar to that found in many other situations where funds are deposited for a special purpose, such as, for example, where a person deposits funds with a bank to meet a note coming due in the future. In such a case the bank is merely a bailee or trustee of the funds if they are not applied *400 for the special purpose for which they are deposited (People v. City Bank of Rochester, 96 N.Y. 32)." Lewis, Law of Leases of Real Property, 2d Ed., page 568. The relation of the parties as to the deposit is usually held to be that of debtor and creditor, but sometimes as that of pledgor and pledgee. American Law of Property, Vol. 1, Sec. 3.73, page 335; Colantuoni v. Balene, 95 N.J. Eq. 748, 123 A. 541.
Since, then, the lease in the instant case provided for forfeiture of the deposit only upon termination of the agreement, and not for the mere breach of any covenant, the rule cited above as controlling in the Stenor case (as to breach of covenants of widely varying importance) has no application. We have not overlooked the fact that the lease in the instant case gave to the lessor the option of terminating the agreement upon the breach of any of the covenants by the lessee and that, upon such termination, the deposit would be forfeited to the lessor; but this fact does not make the cited rule applicable: there is still but one event  the premature termination of the lease  by which the forfeiture could be incurred, and not "several different `events' of widely varying importance." As stated in Burns Trading Co. v. Welborn, 10 Cir., 81 F.2d 691, 695, 106 A.L.R. 285:
"We are of the opinion that the parties had in mind, and intended to provide, not for the damages that the Burns Company would suffer from the breach of a covenant, for which the contract gave it the optional remedy of termination of the lease, but for the loss it would incur on such a termination before the expiration of the term, because of possible delay in securing a new tenant, possible expense of alterations to suit the new tenant, possible decreased rental, and the expenses of securing a new tenant. Such damages would be the same regardless of the character of the breach invoked as a ground for terminating the lease, and they would be damages of such uncertain character that it would be difficult to ascertain and measure them accurately in money." (Emphasis supplied.)
In this connection, it might be noted parenthetically that a lessee who has breached a covenant of a lease which provides for termination thereof by the lessor because of such breach, may under some circumstances avoid the forfeiture of his leasehold estate by activating a court of equity to grant relief from such forfeiture under established equitable principles and where equitable intervention appears clearly to be necessary to prevent an unduly oppressive result. This is particularly true where the breach is of a covenant of minor importance. 32 Am.Jur., Landlord and Tenant, Sec. 892, and 893, page 756; 19 Am.Jur., Equity, Sec. 88, page 99; Nevins Drug Co. v. Bunch, Fla., 63 So.2d 329; Rader v. Prather, 100 Fla. 591, 130 So. 15. Relief from the forfeiture of his leasehold estate would, of course, automatically avoid the forfeiture of his security deposit, where the forfeiture of the deposit is conditioned solely upon the termination of the lease by the lessor.
We wish to make clear, then  and will repeat for emphasis  that where a lease provides for a deposit "to secure the full performance" of all the covenants of the lease, or similar language, without providing for the forfeiture of the deposit for the mere breach of any of the covenants, but only upon the premature termination of the lease by the lessor for the default of the lessee, the cited rule (as to breach of covenants of widely varying importance) has no application to a determination of the question of whether the parties have stipulated for a penalty or for liquidated damages. As noted above, it must be assumed that the lease in the Stenor case provided for forfeiture upon the mere breach of a covenant, so that the rule was properly applied in that case; but insofar as the later decisions of this court which were decided on the authority of the Stenor case, to wit, Nash v. Bailey, Fla., 58 So.2d 680; Glynn v. Roberson, Fla., 58 So.2d 676; and Kaplan v. Katz, Fla., 58 So.2d 853, may be construed to hold to the contrary, *401 they are hereby expressly modified to that extent.
Having shown that the rule which controlled in the Stenor case has no application here, let us then apply to the lease in the instant case the other rules mentioned in that case as applicable to the question of whether a provision for forfeiture of a deposit is one for liquidated damages or for a penalty.
First, were the damages consequent upon a premature termination of the lease by the lessor readily ascertainable? And it should be noted that this question is to be determined by a consideration of the status of the parties at the time the contract was entered into, and not at the time of the breach. As stated by Pomeroy, ibid., Sec. 440b, page 231:
"It may be, as the contract works out, that it would be easy to ascertain the damages for the breach of it, or to prove that there were none. But if the status of the parties at the time of the contract was such that it would be difficult or impossible to have anticipated the damage for a breach of it, and there was a positive element of damage, then, under the authorities, there is no reason why that may not be anticipated and contracted for in advance."
We know of no situation where the damages upon premature termination of a lease are less "readily ascertainable" than in the lease market in the Dade County area. Rentals on hotels and apartment houses in that area fluctuate not only from month to month and week to week, but even from day to day. It is impossible to say at the time of entering into a five-year lease agreement (which was the term of the instant lease) what the lease market will be at any given period during the life of the lease. If the lessee repudiates the lease, or the lessor is compelled to terminate it because of the default of the lessee, the lessor may be able to find a new tenant at a higher rental; or he may be forced to make a new lease at a much smaller rental. But we believe there is no way in which the parties can estimate, with reasonable certainty, what the lessor's damages will be in such case.
Second, is the sum stipulated to be forfeited so grossly disproportionate to any damages that might reasonably be expected to follow from a premature termination of the lease as to show that the parties could have intended only to induce full performance thereunder, rather than to liquidate their damages? And here, again, we are dealing with the intention of the parties at the time of entering into the lease agreement; and there is nothing in the record here to show that the parties believed, at the time of entering into the agreement, that they were stipulating for the forfeiture of a sum out of all proportion to the damages which might reasonably be sustained by the lessor upon the premature termination of the lease. It should, of course, be noted that the circumstances under which the forfeiture of the deposit is actually incurred might be such as to activate a court of equity, in the exercise of its authority to relieve from unjust, unconscionable and oppressive agreements, to grant relief from the forfeiture  as, for example, if the lease was terminated only a few months before it would have expired in the ordinary course so that the lessor's loss is out of all proportion to the amount of the security deposit. But this is an entirely different question from that of determining whether the parties intended to stipulate for a penalty or for liquidated damages. In determining the parties' intention, we consider the circumstances as of the time the agreement was entered into; in determining whether equity should relieve against the forfeiture, we consider the circumstances as of the time of the happening of the event as a result of which the forfeiture is incurred. And there is nothing in the record here to show that it would be unconscionable to allow the forfeiture here provided for to stand.
Another rule cited in the Stenor case, and which was held to be applicable to the facts in that case, may be stated as follows: where a lease gives the lessor an *402 option either to retain the deposit as his liquidated damages or to apply it pro tanto against his actual damages, such a provision by its very terms negatives an intention to liquidate damages in advance and cannot be upheld as such. There was no such provision in the lease in the instant case.
We are cognizant of the rule that, in doubtful cases, the tendency of the courts is to construe a provision for the payment of an arbitrary sum upon breach of a contract as a provision for a penalty, rather than an agreement for liquidated damages. But we think that where, as here, a security deposit is, during the life of the agreement, a fund from which the lessor may reimburse himself for his actual damages for breach of covenant, a different rule should be applied to the provision for its forfeiture upon termination of the agreement; in such case, the security deposit retains its "compensatory" character and is presumed to be liquidated damages and not a penalty.
As stated by Underhill in his Landlord and Tenant, Vol. 1, Sec. 369: "Where it is covenanted in the lease that a sum paid to the landlord by the tenant may be retained by the former in case the tenant is dispossessed from the premises by due process of law, the sum thus to be retained is presumptively liquidated damages and not a penalty." And Sedgwick on Damages, 9th Ed., Sec. 414, states the rule as follows: "Where the instrument refers to a sum deposited as security for performance, or paid in advance to be forfeited on default, the forfeiture, if reasonable in amount, will be enforced as liquidated damages. The intention is evident here that the money shall actually be paid over upon breach of the contract."
This is particularly true in the type of lease with which we are here concerned. It should be remembered that a hotel lease simply brings together money, properties, resources and services in a temporary combination to carry out a successful business undertaking. Where the entire physical resources and properties are contributed by the lessor, the lease is little more than a contract for the services of the lessee, as operator of the premises. Thus, such leases generally require the lessee to make some contribution to the capital investment  either in the form of a security deposit (as in the instant case); or by the payment in advance of the last year's rental (which has certain tax disadvantages to the lessor); or by requiring the lessee to invest a minimum amount in improvements of the leased property. But whatever form such a capital contribution may take, we have no doubt that it is a sine qua non of the joint undertaking; it is just as much a part of the consideration for the lessor's participation in such undertaking as the covenant on the part of the lessee to pay rent. And to hold that a provision for the forfeiture of a security deposit (if the capital contribution is in that form) upon the premature termination of the lease is presumptively a penalty is not only unrealistic  in our opinion, it does violence to the intent of the parties. We think the true rule is as stated by Underhill, quoted above: "the sum thus to be retained is presumptively liquidated damages and not a penalty."
As has been shown, there is nothing in the record to overcome such presumption here, and it must be held that the provision for the forfeiture of the deposit was one for liquidated damages rather than for a penalty; since the record also fails to show any circumstances which would activate a court of equity in relieving the lessee from the forfeiture of his deposit, the lower court must be held in error for so doing.
For the reason stated, the decree is affirmed in part and reversed in part, and the cause remanded for the entry of a decree not inconsistent with the opinions herein expressed.
TERRELL, HOBSON, MATHEWS and DREW, JJ., concur.
THOMAS and SEBRING, JJ., dissent.