**PACIFIC INSURANCE COMPANY, Plaintiff–Counter–Defendant–Appellant,**

v.

**GENERAL DEVELOPMENT CORP., Defendant–Appellee,**

**David F. Brown, Robert F. Ehrling, Defendants–Counter–Claimants–Appellees,**

**Gerald P. Mozian, Joseph P. Zdon, Jr., George T. Scharffenberger, Marshall Manley, Edwin I. Hatch, Eben W. Pyne, Charles J. Simons, Reuben O.D. Askew, Peter R. Brinckeroff, Howard L. Clark, Jr., Defendants,**

**Tore T. De Bella, Richard A. Reizen, Defendants–Counter–Claimants–Appellees,**

**Gerald A. Stilwell, Otis O. Wragg, III, William H. McQuillan, Charles M. Andolsek, David G. Ormsby, Arlene A. Polifroni, Louis Ferkin, Defendants.**

No. 92–4454.

United States Court of Appeals, Eleventh Circuit.

Aug. 12, 1994.

---

Joel Hirschhorn, Coral Gables, FL, for Robert F. Ehrling.

Ricahrd A. Sharpstein, Coconut Grove, FL, for Richard Reizen.

Clark D. Mervis, Miami, FL, for Tore T. De Bella.

Melvin S. Black, Miami, FL, for Polifroni.

James D. Wing, Miami, FL, for Morizan and Wagg.

Robert P. Wright, Jr., Miami, FL, for Scharffenber, Manley, Hatch, Pyne, Askew, Brinckeroff and Clark.

R. Thomas Farrar, Miami, FL, for General Development.

Steven M. Edwards, New York City, Benedict P. Keuhne, Miami, FL, for David F. Brown.

Before KRAVITCH and COX, Circuit Judges, and HOBBS \*, Senior District Judge.

PER CURIAM:

Pacific Insurance Co. appeals from an interlocutory order directing the company to pay the defense costs of four directors and officers of General Development Corp. (GDC). We dismiss the appeal as moot.

I.

GDC develops and markets residential communities. David F. Brown was chairman of its board of directors from 1985 to 1990. Robert Ehrling was president from 1980 to 1990, and was a member of the board of directors at all relevant times. Tore T. De Bella was the senior vice-president for marketing at all relevant times. Richard Reizen was vice-president of marketing from 1982 to

Bruce G. Hermelee, Miami, FL, Joel Scott Townsend, David M. Gische, Joseph R. Gomez, Diane M. Parker, Washington, DC, for appellants.

\* Honorable Truman M. Hobbs, Senior U.S. District Judge for the Middle District of Alabama,

1989.[1]

In September 1985, GDC purchased primary and excess director and officer (D & O) liability insurance from National Union Fire Insurance Co. In September 1987, GDC purchased further excess D & O coverage from Pacific. This policy, which incorporated the terms and conditions of the underlying primary policy with National Union, provided $10 million in coverage on claims in excess of $10 million. GDC renewed the policy in 1988 and 1989.

A number of civil lawsuits were filed against GDC in 1988 alleging fraud in connection with the marketing and sale of its houses. Two years later, GDC, Brown, and Ehrling were indicted by a federal grand jury on fraud charges; the indictment was subsequently superseded by a new indictment naming, in addition to Brown and Ehrling, De Bella and Reizen. GDC pleaded guilty to one count of conspiracy. Shortly thereafter, a number of securities class actions were filed against the Insureds and other GDC directors and officers, alleging fraud for failure to disclose the information contained in the criminal indictment.

GDC petitioned for reorganization under Chapter 11 of the Bankruptcy Code in April 1990. This filing prevented GDC from funding the Insureds' defense in the pending litigation. As a result, the Insureds and other GDC directors and officers sought coverage under the company's D & O policy with National Union for defense costs in the pending civil and criminal actions. National Union and counsel for the directors and officers eventually entered into a series of interim agreements pursuant to which National Union agreed to pay legal fees and defense costs as incurred in the civil and criminal suits.

At about the time National Union and the Insureds were agreeing to this interim funding arrangement, Pacific notified GDC that it was rescinding the three excess policies because the applications for each contained material misrepresentations and/or omissions.[2] After GDC notified Pacific that it disputed Pacific's right to rescind, Pacific filed this action as an adversary proceeding in the bankruptcy court. In its complaint, Pacific asserted that under the Florida Claims Administration Statute, 37 Fla.Stat. § 627.-409(1) (1982), GDC's misrepresentations and omissions rendered the policy void *ab initio*. The district court subsequently determined that the action was a non-core proceeding, removed the case, and assumed jurisdiction over it.

As the Insureds were reaching the $10 million limit under the primary policy, they sought coverage under Pacific's excess policy. Pacific denied the claims, still asserting that the policies were null and void due to fraud. In response, the Insureds filed a counterclaim to Pacific's complaint seeking a declaration of the validity of Pacific's policies and specific performance. The Insureds' then moved for partial summary judgment on this counterclaim. In response, Pacific asserted that a genuine issue of material fact existed as to the validity of the policy under which the Insureds sought coverage, thus making summary judgment inappropriate.

The district court granted the Insureds' motion and issued an order (the April 1992 order) directing Pacific to "pay the Insured Defendants' defense costs as they are incurred until fraud, dishonesty or criminal acts are established by a judgment or other final adjudication or there is a final adjudication voiding or rescinding the policy."[3] Pursuant to the district court's order, Pacific began to advance funds to the Insureds for costs incurred through the course of the criminal trial. This appeal ensued.

On August 5, 1992, while the instant appeal was pending, each of the Insureds was found guilty of fraud or conspiracy to commit fraud

---

sitting by designation.

1. Brown, Ehrling, De Bella, and Reizen will be referred to collectively as "the Insureds."

2. The basis for the rescission, according to Pacific, was that GDC's application for the 1987–88 policy falsely represented that "[n]o director or officer has any knowledge or information of any negligent act, error, omission [sic] or breach of duty which he reasonably should expect could give rise to a claim against him." R.Supp. 3–46 at 5 & Exh. H.

3. R.Supp. 3–58 at 6.

in connection with GDC's housing sales and marketing practices from 1982 to 1989. Pacific immediately moved for relief from the district court's April 1992 order, asserting that, by its own terms, the order was no longer effective because the Insureds had been adjudged guilty of fraud.[4] Accordingly, on January 21, 1993, the district court granted Pacific's motion to modify the April 1992 order as to the Insureds (the January 1993 order).

## II.

■ A threshold question is whether the interlocutory grant of partial summary judgment in favor of the Insureds is an appealable order. We generally may review only final judgments. *See* 28 U.S.C. § 1291. In this case, the district court did not direct the entry of final judgment on the Insureds' claim for specific performance. *See* Fed. R.Civ.P. 54(b). As such, the partial summary judgment order is not appealable under § 1291.

Federal statute provides that "the courts of appeals shall have jurisdiction of appeals from ... interlocutory orders of the district courts ... granting ... injunctions, except where a direct review may be had in the Supreme Court." 28 U.S.C. § 1292(a)(1) (1988). In *National Union Fire Ins. Co. v. Sahlen*, 999 F.2d 1532 (11th Cir.1993), this court held that an interlocutory order granting a request by directors and officers that their insurer pay their defense costs pending resolution of the insurer's claim for rescission of their D & O liability policy was an injunction for purposes of § 1292(a)(1). *Id.* at 1535. Hence, the April 1992 order in this case was an injunction, the issuance of which

is appealable interlocutorily. Consequently, we have jurisdiction to hear Pacific's appeal.

## III.

The next question is whether the Insureds' convictions render the instant appeal moot. We hold that they do.

■ A case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief. *E.g., Ethredge v. Hail,* 996 F.2d 1173, 1175 (11th Cir.1993). It is incumbent upon this court to consider issues of mootness *sua sponte* and, absent an applicable exception to the mootness doctrine, to dismiss any appeal that no longer presents a viable case or controversy. *See, e.g., Hogan v. Mississippi Univ. for Women,* 646 F.2d 1116, 1117 n. 1 (5th Cir. Unit A June 1981), *aff'd,* 458 U.S. 718, 102 S.Ct. 3331, 73 L.Ed.2d 1090 (1982).[5]

■ The appeal in this case focuses solely on whether the district court erred in requiring Pacific to pay the Insured's interim defense costs prior to the court's disposition of the company's action for rescission. The April 1992 order required Pacific to "pay the Insured Defendants' defense costs as they are incurred *until fraud, dishonesty or criminal acts are established by a judgment.*"[6] Thus, by the terms of that order, Pacific was relieved of its obligation to pay defense costs on August 5, 1992, the date on which the Insureds were convicted of fraud and conspiracy. Because Pacific is no longer required to advance the Insureds' defense costs, and has ceased to do so, no meaningful relief remains for us to provide. In short, the injunction we are asked to review has expired by its own terms. Any opinion we would render on the merits would be purely advisory.[7]

---

4. While Pacific's Rule 60(b) motion for relief from judgment was pending, the district court consolidated this case with a parallel action involving GDC's primary D & O carrier, National Union. Also at that time, a number of GDC's other directors and officers, who were not subject to criminal charges but were defendants in civil suits, answered Pacific's complaint and responded to Pacific's 60(b) motion, arguing that because they had not been found to have committed fraud, Pacific was obligated under the excess policy to advance funds to cover costs incurred in defending those civil actions.

5. Decisions of the former Fifth Circuit rendered prior to October 1, 1981, constitute circuit precedent in the Eleventh Circuit. *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

6. R.Supp. 3–58 at 6 (emphasis added).

7. It is worth emphasizing that our conclusion that Pacific's obligation to pay the Insureds' defense costs ceased upon the Insureds' convictions, and that the appeal is thus moot, is based on the terms of the April 1992 order and not on

The only interest Pacific arguably retains in the wake of the Insureds' convictions is an interest in obtaining restitution of the funds the company previously advanced for the Insureds' defenses. This interest cannot save the appeal from dismissal on mootness grounds, however, because a decision on the merits of the appeal is neither necessary nor sufficient for Pacific to recover restitution. Whether Pacific will be able to obtain restitution ultimately depends on the resolution of its rescission action; if the district court finds that the policy was fraudulently induced, it shall void the insurance policy *ab initio* pursuant to Florida law, enabling Pacific to obtain reimbursement of the funds advanced. *See Hyman v. Cohen*, 73 So.2d 393, 397 (Fla.1954); *see also Sahlen*, 999 F.2d at 1537 ("Had the district court [compelled the insurance company to make interim payments to the insured officers and directors,] any payments made to the Insureds would have become immediately subject to the [company's] pending claim for reimbursement" once the court found the policy void.). Thus, a decision on the merits of this appeal would have little or no effect on whether Pacific would be able to obtain reimbursement. Accordingly, the possibility of restitution cannot breathe life into this otherwise expired case.

Nor does this appeal fit within the exception to the mootness doctrine for cases "capable of repetition, yet evading review." Although it is not unlikely that the issue will recur, we do not believe this type of claim is inherently of such short duration that it consistently will evade future appellate consideration. *See Ethredge*, 996 F.2d at 1176.[8]

For the reasons stated above, the appeal is DISMISSED as moot.

HOBBS, Senior District Judge, concurring:

I concur reluctantly with the court that the appeal in this case should be dismissed as moot for the reasons stated in the court's opinion. My reluctance stems from my view that an insurance company should be able to get a judicial determination as to whether its insurance policy is void *ab initio* before it is required to expend millions of dollars in defense of persons named as insureds on such a policy. Pacific notified its insured in March 1991, before any claim was asserted against Pacific on any of its policies, that it was rescinding its policies because the applications as to each contained material misrepresentations and/or omissions. Pacific's position apparently was subsequently proved correct when the insured's directors and officers

the fact that the district court vacated that order in January 1993. Whether the district court had jurisdiction to issue the January 1993 order is an open question, because at the time that order was issued, Pacific already had filed a notice of appeal from the April 1992 order. As a general rule, "[t]he filing of a notice of appeal ... divests the district court of control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58, 103 S.Ct. 400, 402, 74 L.Ed.2d 225 (1982). On the other hand, there is an exception to this rule:

> When an appeal is taken from an interlocutory or final judgment granting ... an injunction, the court in its discretion may suspend [or] modify ... an injunction during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party.

Fed.R.Civ.P. 62(c). Because the April 1992 order was an injunction under 28 U.S.C. § 1292(a)(1), *see supra*, the district court's January 1993 modification of that order arguably was proper under Rule 62(c). We need not determine whether Rule 62(c) applies in this case, however, because the validity of the January

1993 order does not affect the analysis. The January 1993 order simply reaffirmed what the April 1992 order already provided: that Pacific ceased to be liable for the Insureds' defense costs after the Insureds were convicted on August 5, 1992.

8. At oral argument, Pacific asserted that the appeal is not moot because the April 1992 order furnished the rationale upon which the district court based its January 1993 holding that Pacific must pay the defense costs of several other GDC officers and directors who were not convicted of any crimes. This bootstrapping argument is unavailing. The April 1992 order applied solely to the four convicted Insureds. Indeed, the non-convicted defendants did not even answer Pacific's complaint until after the four Insureds were convicted and the April 1992 injunction expired by its own terms. Pacific could have appealed the January 1993 order to the extent that it directed Pacific to pay the interim defense costs of the non-convicted defendants. Having failed to do so, Pacific may not seek redemption collaterally through the appeal of a related, *but separate*, order that otherwise presents no live controversy.

were found guilty of knowing and willful participation in fraudulent acts which had occurred prior to the alleged misrepresentations on the insurance application. However, by the time of such determination, Pacific had been required to expend over four million dollars in defending such persons under what appears to be a void policy.

Agreeing with the court that the appeal in this case should be dismissed as moot, I would not wish such agreement to be seen as agreement with the result visited on Pacific in being denied a hearing for months or years on its claim of rescission while it was required to pay millions in defense costs on policies which appear to be void *ab initio*. Such a result would be required only if this is the rule of law as determined by the Florida courts. It does not appear that the Florida courts have spoken definitively on this issue.