**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

TIDEWATER FINANCE COMPANY,
INCORPORATED,

　　　*Plaintiff-Appellant,*

v.

FISERV SOLUTIONS, INCORPORATED,

　　　*Defendant-Appellee.*

}

No. 00-1529

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Raymond A. Jackson, District Judge.
(CA-99-696-2, CA-99-697-2)

Argued: January 24, 2001

Decided: February 27, 2001

Before MOTZ and TRAXLER, Circuit Judges, and
Malcolm J. HOWARD, United States District Judge for the
Eastern District of North Carolina, sitting by designation.

---

Affirmed by unpublished per curiam opinion. Judge Traxler wrote an
opinion concurring in part and dissenting in part.

---

## COUNSEL

**ARGUED:** Joe Gray Lawrence, Jr., FAGGERT & FRIEDEN, P.C.,
Chesapeake, Virginia, for Appellant. Thomas E. Spahn, MCGUIRE
WOODS, L.L.P., Richmond, Virginia, for Appellee. **ON BRIEF:**
Thomas B. Kelly, FAGGERT & FRIEDEN, P.C., Chesapeake, Vir-

ginia, for Appellant. Laura R. White, MCGUIRE WOODS, L.L.P., Richmond, Virginia; Robert W. McFarland, MCGUIRE WOODS, L.L.P., Norfolk, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

Appellant Tidewater Finance Company, Incorporated, ("Tidewater") appeals the orders of the district court denying its motions for summary judgment and various evidentiary issues. We affirm.

### I.

Incorporated since 1968, FIS (and its successor Fiserv) ("Fiserv") has been providing data processing ("EDP") and related services to banks, savings and loans, finance companies, and other institutions. The main Fiserv EDP system at issue in this litigation is called the "Dollar System."

Tidewater is a sub-prime finance company. Tidewater frequently contracts with vendors and suppliers of equipment and services. Tidewater also maintains relationships with numerous retailers (car and furniture dealers, etc.) who loan money to consumers for retail purchases, often using loan forms that Tidewater supplies to the retailers. Tidewater buys these loan agreements from the retailers and enforces them against the borrowers.

In the mid-1990's Tidewater's business was expanding, and Tidewater needed more money to buy consumer loan contracts. The bank indicated that it would loan the money only if Tidewater arranged for a more efficient EDP system to assist the processing of loans and its

other business functions. The bank recommended that Tidewater contact Fiserv.

Prior to a scheduled meeting on September 5, 1996, in Orlando, Florida, Tidewater sent Fiserv a list of system capabilities that Tidewater wanted. Fiserv prepared a response, indicating in most cases that the Dollar System did not include the capabilities that Tidewater wanted. Tidewater claims that Fiserv's representatives made oral promises at the September 5 meeting that contradict Fiserv's written responses which indicated that Fiserv could not, at that time, meet Tidewater's demands. However, Tidewater did not confirm these alleged promises in writing, did not prepare any internal memoranda describing the promises and did not insist or even request that the promises be made part of the contract. Therefore, as the district court held, it is impossible to acknowledge the existence of such promises without any affirmative proof of their existence.

Tidewater and Fiserv thoroughly negotiated and entered into four separate contracts. Three of these contracts involved Fiserv software licensed to Tidewater. The fourth contract, which is primarily at issue in this litigation, covered the Fiserv Dollar System and is called the "Information Processing Agreement" ("Agreement").

As indicated in the agreement, the services provided for consist of numerous components and had a five-year term with automatic renewals under certain conditions. However, the parties could agree, in writing, to terminate at any time. The agreement contained a detailed clause specifying how the parties would work together to disengage if either one ended the relationship. If Tidewater wanted to end the relationship, it was required to provide written notice to Fiserv. Upon receiving such written notice, the parties would consult and agree on some termination date, prior to which Tidewater was obligated to keep paying Fiserv.

The agreement provision mainly at issue in this litigation is paragraph 20. Paragraph 20(a) described the consequences if Tidewater defaulted in its obligations or breached certain contractual duties. Paragraph 20(b) defined breach as Tidewater's "transfer without the written approval of FIS any of the services provided hereunder to a competitor or to in house capabilities." If Tidewater breached the

agreement by such a transfer, paragraph 20(c) allowed Fiserv to, (1) declare a default or (2) at Fiserv's sole option, declare in writing a partial breach entitling Fiserv to liquidated damages.

According to Fiserv, the liquidated damages provision essentially allowed Fiserv to collect from Tidewater what it would have earned had Tidewater remained on the system for the entire five-year term of the contract as Fiserv required this provision to recoup its initial front loaded investment.

Tidewater converted to the Fiserv system in March 1997. In August 1997, after using the Fiserv system for about five months, Tidewater claims that, due to various problems, Fiserv promised Tidewater that it could terminate the relationship without paying the liquidated damages. However, as the jury found, no one at Tidewater confirmed such a promise in any written communication to Fiserv or even in an internal memorandum. Instead, Tidewater remained on the Fiserv system and continued to pay its monthly bills. Six months later, in February 1998, the Tidewater President wrote Fiserv a letter and asked to be relieved of its contractual obligations. When Fiserv declined, Tidewater did not rely on the alleged promise or sue Fiserv for breach of contract. Instead, Tidewater remained on the system and continued to pay its bills for another ten months.

Tidewater continued to send periodic complaints to Fiserv about its system, yet never sent a written notice of a desire to terminate the agreement and no longer use the services. In February 1999, Tidewater became delinquent in paying its bills, and Fiserv sent a default letter, which was cured by a check to Fiserv.

In a March 2, 1999, telephone conversation, Tidewater expressed its desire to terminate the agreement. Fiserv, then proceeded to calculate the liquidated damages based on what its argues, and the trial court held, was a partial breach.

Tidewater instituted two suits in the circuit court of the City of Virginia Beach, one for declaratory judgment to adjudicate whether or not the parties had settled their differences and the other, a motion for judgment seeking damages for fraud and breach of contract. Fiserv removed the cases to federal district court and filed a counterclaim for

breach of contract and conversion seeking liquidated damages and fees. The district court denied Tidewater's motion for summary judgment. On February 1, 2000, the jury returned a verdict in favor of Fiserv in the amount of $536,250.60 for liquidated damages, but denied its claim for unpaid fees. Tidewater renewed its motion under Rule 50 and the motion was denied. This appeal is from the district court's judgment on Tidewater's motions for summary judgment and the jury's verdict awarding Fiserv liquidated damages.

## II.

## TIDEWATER'S RULE 50 MOTIONS

### A.   Standard of Review

"Rule 50(a) provides that, in actions tried by a jury, the district court may grant a motion for judgment as a matter of law if a 'party has been fully heard . . . and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party.'" *Malone v. Microdyne Corp.*, 26 F. 3d 471, 475 (4th Cir. 1994). This court reviews a district court's denial of a Rule 50 motion *de novo*, yet this court nevertheless reviews the jury's verdict "in the light most favorable to the party in whose favor it is found, and such a party is entitled to the benefit of all inferences which the evidence fairly supports, even though contrary inferences might be drawn." *Jacobs v. College of William & Mary*, 517 F. Supp. 791, 794 (E.D. Va. 1980), *aff'd*, 661 F.2d 922 (4th Cir. 1981). A "[c]ourt should not attempt to substitute its judgment for the jury." *Id*.

### B.   Discussion Of Liquidated Damages

#### 1.   *Date Of Computation Of Liquidated Damages*

Tidewater argues that the award of liquidated damages must be set aside because it was calculated as of an incorrect date contending that, based on the language of the contract, liquidated damages must be computed for the six full calendar months period immediately preceding the transfer by client of any of the services provided under the agreement to a Fiserv competitor or in-house capabilities. Tidewater

argues that the date should be the date on which services were terminated by Tidewater, not the date Fiserv ceased providing services.

Paragraph 20(c) of the agreement states that liquidated damages are

> a sum equivalent to the average monthly gross revenue recieved by FIS on account of the Services of FIS transferred either to a competitor or to in-house capabilities by Client during the six (6) full calendar month period immediately preceding such transfer, which average monthly sum shall be multiplied by the remaining term of this agreement.

This provision clearly requires liquidated damages to be calculated as of the end of the month before the date that services are transferred by Tidewater to a competitor or in-house. Thus, the only question remaining is was the jury correct in determining that the date was February 28, 1999 - the last day of the full month before March 2, 1999, the date Tidewater notified Fiserv that it would no longer use any of Fiserv's services, or December 10, 1999 - the date Tidewater actually switched to another service? Thus, Tidewater argues that liquidated damages should be calculated using the date it stopped accessing the services, while Fiserv maintains that damages should be calculated from the date Tidewater notified Fiserv to stop providing services or making them available.

As the district court noted, this dispute is a classic factual issue for the jury to decide. Accordingly, because there was a factual dispute fueled by conflicting evidence combined with the fact that the language in the contract on this issue is ambiguous, the court properly left the question of the date from which liquidated damages should be computed to the jury.

The jury determined that the phrase "Services of FIS transferred" refers to more than the transferring of accounts to another provider, but requires the knowledge of Fiserv since it must discontinue providing services which requires its knowledge. This is certainly a reasonable interpretation.

Tidewater bears the burden of proving that "reasonable men could reach no other conclusion than" the transfer of services occurred in

December. Tidewater does not meet this burden as the jury's interpretation is a reasonable one.

## 2. *Availability Of Liquidated Damages*

The closest and most beguiling question in this case is whether liquidated damages were at all available to Fiserv. This issue can actually be broken down into two separate questions. First, is Tidewater procedurally barred from making this argument? Second, did a partial breach, which would trigger liquidated damages, ever occur?

The Fourth Circuit has held that a party who does not move for judgment as a matter of law on an issue pursuant to Rule 50(a) waives its right to move to set aside a verdict for that reason pursuant to Rule 50(b). *Smith v. University of North Carolina*, 632 F. 2d 316, 338-39 (4th Cir. 1980). Further, a party who waives an argument before a district court may not appeal the same argument to this court. *Id.* Consequently, this court does not review the sufficiency of evidence not challenged on a Rule 50(a) motion. *Bristol Steel & Iron Works, Inc. v. Bethlehem Steel Corp.*, 41 F. 3d 182, 188 (4th Cir. 1994). Fiserv argues that Tidewater did not raise a challenge to the liquidated damages clause in its answers or in either of its Rule 50 motions and therefore may not raise the issue here.

Tidewater, however, asserts that the district court erred, and that it did, in fact, raise the issue in its answers. In its answer to Fiserv's counterclaim, Tidewater stated, "affirmatively that the wording of the agreement does not impose any liability upon Tidewater." The district court found that such language was simply boilerplate and did not suffice to plead an affirmative defense. This language does not specifically mention the liquidation clause and, therefore, Tidewater should be procedurally barred from raising this issue.

Even if Tidewater is not procedurally barred from raising the issue of partial versus total breach, there is enough evidence in the record for a reasonable jury to find that Fiserv notified Tidewater of a partial breach making an award of liquidated damages appropriate under the contract. For example, as a result of the March 2, 1999, conversation between the parties - a conversation in which Fiserv first learned that Tidewater was terminating the services - Fiserv calculated the liqui-

dated damages and sent Tidewater a letter "indicating what the termination liquidated damages were." This letter indicates Fiserv's intention to declare a partial breach as it specifically mentions the remedy of liquidated damages, a remedy that would only be appropriate under a partial breach of the agreement.

## SETTLEMENT

The issue of settlement in this matter, as explained by the trial judge and as suggested by the statement of the facts in this case, is a classic "he said, she said." Such an issue of historical facts and credibility determinations is one for the jury to decide.

## THE COURT'S EVIDENTIARY RULINGS

### A.   Standard of Review

This court reviews challenges to evidentiary rulings for abuse of discretion. *United States v. Whittington*, 26 F. 3d 456, 465 (4th Cir. 1994).

### B.   Discussion

#### 1.   *The Default Letter*

Based on the standard of review applicable to evidentiary rulings, this court finds that the trial court did not abuse its discretion by allowing testimony about the default letter under the "Best Evidence Rule."

#### 2.   *Prevention of Performance Instruction*

Tidewater claims that the district court abused its discretion by instructing the jury about the doctrine of prevention of performance which states that a party is excused from performing its contractual obligations if the other party prevents performance. One of Fiserv's defenses to the breach of contract claim against it was that if the jury found it breached (which the jury found it did not, so this point is essentially moot), then it could use the defense of prevention of per-

formance. Therefore, the trial court did not abuse its discretion by allowing such an instruction.

### 3. *The "Shevel's" Instruction?*

Tidewater did not object when the district court rejected its proposed instruction which explained that despite the written agreements, the jury should consider all of the representations ever made to Tidewater before and after the contracts were signed. Based on the standard of review applicable to evidentiary matters, this court would have to find that the lower court abused its discretion when it found that there was not sufficient evidence of the disputed representations. Clearly, the trial court found that there was not enough evidence to give such an instruction. Simply put, Tidewater did not object when the district court rejected its proposed instruction and the district court did not abuse its discretion in doing so.

### 4. *Instruction On Actual Damages*

The trial judge followed Florida law precisely in instructing the jury on how to calculate damages.

### 5. *Tidewater's Fraud Claim*

It is clear from the testimony of both parties that this matter is a contract dispute about the terms and conditions of the contract. Fraud simply did not play a part in this matter and the district court was correct in granting summary judgment for Fiserv on this issue.

*AFFIRMED*

TRAXLER, Circuit Judge, concurring in part and dissenting in part:

This dispute completely ended the contractual relationship between the two parties. They had no further business dealings with each other thereafter. Regardless of who was at fault, the breach was total and absolute. Yet somehow Fiserv managed to have the breach considered "partial." Because this breach was in no way partial and hence no basis existed for liquidated damages, I respectfully dissent.

First, Fiserv argues that Tidewater did not raise this issue as an affirmative defense in its answer and therefore has waived any challenge relating to the liquidated damages provision. To the extent Tidewater challenges the liquidated damages clause as unreasonable or unenforceable, Fiserv is correct. *See Public Health Trust v. Romart Constr., Inc.*, 577 So.2d 636, 638 (Fla. Dist. Ct. App. 1991). However, the issue of whether there was a partial or a total breach has nothing to do with the reasonableness of the liquidated damages clause. This separate question is simply whether the clause applies, not whether the clause is an impermissible penalty. Hence, Tidewater was not required to raise the nature of the breach as an affirmative defense.

Second, Fiserv argues that Tidewater did not preserve the issue of partial versus total breach in its Rule 50 motions. To the contrary, before the case was submitted to the jury Tidewater moved for judgment as a matter of law, arguing that there was a total breach rather than a partial breach. *See* J.A. 1105-09. The district court denied the motion. *See* J.A. 1118. In its post-trial motions, Tidewater renewed its motion for judgment as a matter of law on the grounds that no partial breach occurred and the district court again denied the motion. *See* J.A. 1229-30. Accordingly, the issue was properly preserved.

Finally, Fiserv points out that it provided Tidewater with notice of a partial breach as required by the contract. However, the fact that Fiserv provided notice of a breach which it chose to call "partial" has no bearing on whether, as a matter of law, a partial breach actually occurred. The question of notice is a separate and distinct inquiry.

In my view, the district court erred in denying Tidewater's Rule 50 motions on the issue of total versus partial breach. A total breach of contract strikes at the whole of the contract or the whole of the consideration. *See Hyman v. Cohen*, 73 So.2d 393, 397 (Fla. 1954) (en banc); Restatement (Second) of Contracts § 241 (1979). Because Tidewater refused to accept any of the services for which it contracted, this breach was material and went to the heart of the contract. Thus, as a matter of law, the liquidated damages provision was not applicable to Tidewater's breach.

I would reverse the district court's denial of Tidewater's Rule 50(b) motion and remand for further proceedings. As to the remainder of

the panel's rulings, I concur in those parts not inconsistent with my dissent.