792 So.2d 520 (2001)
The GABLES, Gables/Kovens, Inc., and Gables Design Group, Inc., Appellants,
v.
Arthur B. CHOATE, Appellee.
Nos. 3D00-1589, 3D00-2480.
District Court of Appeal of Florida, Third District.
June 6, 2001.
Rehearing and Rehearing Denied August 29, 2001.
*521 Pertnoy, Solowsky, Allen & Haber and Sidney M. Pertnoy, Miami, for appellants.
Wicker, Smith, Tutan, O'Hara, McCoy, Graham & Ford and Shelley H. Leinicke, Fort Lauderdale, for appellee.
Before SCHWARTZ, C.J., SORONDO, J., and NESBITT, Senior Judge.
Rehearing and Rehearing En Banc Denied August 29, 2001.
PER CURIAM.
The Gables, Gables/Kovens, Inc. and Gables Design Group, Inc., condominium developers and decorators, appeal an order that they pay liquidated damages and attorney's fees to a purchaser who moved into an unfinished condominium unit.
On December 8, 1995, Arthur B. Choate signed a purchase and sale agreement with The Gables for a $700,000.00 luxury condominium unit. The contract provided that the unit be completed by May 1, 1996, and that if the unit was not completed on time, Choate would receive a credit of $5,000 per month until closing. (This provision of the contract was enforced and is not subject of this suit). By December, 1996, the unit was still incomplete and The Gables was in financial straits. An improvement contract was incorporated into the closing agreement, providing that if the unit was not finished within thirty days The Gables would pay Choate $5,000 per week:
[S]hould completion of all of the items set forth in Paragraphs 2A and B above be delayed beyond said thirty (30) day period, developer and interior contractor agree to pay Buyer the sum of Five Thousand ($5000.00) Dollars for each seven (7) day period of such delay. By way of example, should the completion of all said items occur thirty-one (31) days from the date hereof, Developer and interior Contract[or] shall pay $5,000 to the Buyer. Should completion occur thirty-eight (38) days from the date hereof, Developer and interior Contract[or] shall pay $10,000.00 to the Buyer.
The contract also provided that if Choate failed to close, he would forfeit his entire $175,000.00 deposit.
Choate moved into his unfinished unit on January 20, 1997. According to Choate, during most of 1997, the apartment was full of dust, buzz saws, plaster, spilled paint, and normal day-to-day living was disrupted. The floor was as wavy as the wall, with separations between the carpeting and threshold. There were holes in the floor and many doors would not close. One shower enclosure was unusable. When a shower enclosure was finally installed *522 six months later, the installers cracked tiles (which they never repaired), and did such a poor job that the shower door was inoperable. Two bathrooms lacked useable doors. A Jacuzzi pump did not work, its access wiring was exposed, and a hand-held shower nozzle was missing. The shower, tub, sink, faucet and toilet levers were missing from the master bath. Mirrors were missing. A large area between the casement and ventral area of a window was problematic because improper grout was used. Where painting had been done, paint splatters were everywhere, and touch-up paint did not match the original color. Improperly installed plumbing leaked, necessitating removal and re-application of baseboards. Pocket doors were improperly installed so that the molding rubbed the finish off the doors. Debris blocked hurricane shutters. Workers left soda bottles, dirt, and flying debris and Choate was left to clean up.
The Gables' interior designer acknowledged that she could not get contractors to this job site quickly and that Choate did not do anything to prevent the work being done. She knew that time was of the essence because of the $5,000 per week liquidated damage provision. The designer confirmed that the contractors were messy and agreed that The Gables never completed the work.
An independently retained contractor testified that his inspection showed that the work by The Gables was incomplete and had been done in a slipshod, unworkmanlike manner. The developer acknowledged that work continued for months after Choate moved into his apartment and that after six months, The Gables walked off the job and Choate hired another contractor. The work was finally finished in September, 1997.
The building contractor originally on the job admitted that the painting was not done in a workmanlike manner and that they never finished everything to Choate's satisfaction. He said that some of the problems were due to subcontractors going out of business. Despite these problems, the developer testified that the work was "substantially complete" when Choate moved in.
On these facts, the trial court determined that Choate was entitled to summary judgment on the issue of the enforceability of the liquidated damage clause of the closing agreement. In a nonjury trial, the court determined that Choate was entitled to recover $126,654.68 under the contract as a result of The Gables' construction delays, plus attorneys fees. The Gables appeals.
The Gables argues that the liquidated damages at issue are, in reality, a penalty that is totally disproportionate to Choates' actual damages. We disagree. Florida law recognizes that where damages are not clearly ascertainable, parties to a contract may agree to a predetermined amount of damages that will flow from a breach of their contract. See Hyman v. Cohen, 73 So.2d 393 (Fla.1954). In Public Health Trust of Dade County v. Romart Construction Inc., 577 So.2d 636 (Fla. 3d DCA 1991), this Court reversed a trial court's refusal to enforce a liquidated damage clause similar to the one at issue here. The Court stated:
[W]e conclude that the trial court erred in declining to give effect to the $2,500 per diem liquidated damages as provided in the subject contract for the ... 68-day delay in failing to substantially complete the project.... [A]s the trial court orally indicated below, the $2,500 liquidated damages was a perfectly reasonable assessment of damages for each day the plaintiff Romart Construction, Inc. was late in failing to substantially complete the contract as agreed to by *523 the parties. The fact that Dade County may have suffered no monetary loss for this 68-day delay did not, as urged, render this clause unconscionable, because the medical center being constructed was intended as a public facility, not as a profit-making enterprise.
Id. at 637-38.
The parties in this case negotiated for the purchase and sale of a luxury residence. Both sides are obviously sophisticated and were represented by counsel. We agree with Choate that the liquidated damage provision was included for the obvious reason that actual damages could not be determined at time of closing and in recognition of the fact that Choate, as purchaser, would suffer significant inconveniences in the event the dwelling was not completed in a timely and workmanlike manner. For the eight to nine months that followed the closing, Choate was forced to live in a construction zone rather than the near three-quarter million dollar luxury apartment for which he bargained. Six months after closing, The Gables abandoned the premises and Choate was forced to contract another construction company to finish the job. The prolonged inconvenience, discomfort, invasion of privacy and renegotiation with another contractor to complete the job were exactly the things the parties considered when they agreed to the liquidated damage provision.
Affirmed.
SCHWARTZ, C.J. and SORONDO, J., concur.
NESBITT, Senior Judge, (dissenting):
I respectfully dissent. As the parties concede, a certificate of occupancy had been issued for the condominium unit at issue, otherwise, Mr. Choate would not have been permitted to move in. There is no doubt that a substantial number of matters remained on the "punch list." However the unit owner admits the work was ultimately completed by other contractors for only slightly over $8,000, a far cry from the $126,654.68 awarded. See Hyman v. Cohen, 73 So.2d 393, 398 (Fla.1954)(concluding that where actual damages for breach of agreement are readily ascertainable and sum stipulated to be paid in event of breach is disproportionate thereto, stipulated sum will be regarded as a penalty). Thus, I cannot agree that the amount of $5,000 a week can be viewed as other than a penalty. Remember prior to closing, the parties' original contract set liquidated damages at $5,000 for every month of delay in closing on the unit. It is hard to understand why living in the unit with the inconveniences recited would merit monthly liquidated damages four times that amount, or $20,000 a month. The liquidated damages ordered for the eight month period before the unit was "completed" amounted to an sum equal to over one quarter of the full price paid for the unit.
Whether a sum stipulated to be paid in the event of a breach will be considered as a penalty or liquidated damages is a question of law for the court. See Greenblatt v. McCall & Co., 67 Fla. 165, 64 So. 748, 749 (1914). Furthermore, where it is doubtful whether a contract provision constitutes a penalty or liquidated damages the tendency of the courts is to construe a provision for payment of an arbitrary sum a penalty rather than one for liquidated damages. See Hyman, 73 So.2d at 402. Here, the same $5,000 a week was levied whether the uncompleted work was as serious as an unusable shower or as innocuous as a paint splatter. See Stenor, Inc. v. Lester, 58 So.2d 673, 676 (Fla.1951)(Where an agreement is to pay the same sum for a partial as for a total breach of the agreement, or is to secure the performance of covenants of widely varying importance for any of *524 which the sum is excessive, the sum will be regarded as a "penalty".) The inescapable conclusion is that the $5,000 a week figure was devised to hold the developer and decorator "in terrorem" and this, our Supreme Court has held, cannot be done. See Greenblatt, 64 So. at 749. The $2,500 a day charge for a delay in the completion of an entire medical center found proper in Public Health Trust v. Romart Construction, Inc., 577 So.2d 636 (Fla. 3d DCA 1991), simply does not support the owner's position. I would reverse for a determination of the owner's actual damages.